*No Parties Added*
*No Summons Issued*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————X

TOWN OF NEW WINDSOR,



U.S. DISTRICT COURT FILED MAR 0 3 2011 S.D. OF N.Y. WP

                      *Plaintiff,*

-against-

**AMENDED
COMPLAINT**

AVERY DENNISON CORPORATION, DENNISON
MONARCH SYSTEMS, INC., and DENNISON
MANUFACTURING COMPANY,

10-Civ.-08611 (CS) (LMS)

                      *Defendants.*

————————————————X

The Town of New Windsor ("Town" or "Plaintiff"), by and through its undersigned attorneys, respectfully alleges as follows:

### Nature of Litigation

1. This is an action for the recovery of compensatory and punitive damages, and for injunctive relief, against Defendants Avery Dennison Corporation, Dennison Monarch Systems, Inc., and Dennison Manufacturing Company (collectively, "Defendants") arising from contamination of the Town's municipal drinking water wells by discharges of chlorinated solvents by Defendants and their predecessors.

2. From 1956 to 1994, Defendants operated a manufacturing facility ("plant" or "Monarch Systems plant") at which they manufactured metal office furniture, accessories and office equipment. As part of that manufacturing operation, Defendants used hazardous

1

substances, including chlorinated solvents such as 1,1,1-trichloroethane ("TCA"), trichloroethene ("TCE"), and 1.1 dichloroethene ("DCE"). These chemical contaminants and other compounds, including metal residuals from Defendant's manufacturing process wastes, were used, stored, and discharged into underground pits on plant property. Defendants' reckless use of these hazardous substances resulted in massive solvent contamination of soils, groundwater and bedrock under the plant itself, as well as a huge plume of subsurface contamination that migrated off site, through soils and groundwater, into adjacent wetlands and onto Town-owned property.

3. Defendants' own environmental consultants reported that groundwater beneath the plant property moves in an easterly direction from the solvent pits, toward the Town's property, known as the Little Falls Ponds Wellfield ("the Wellfield"). The edge of this solvent plume is now contaminating the Town's municipal drinking water supply wells that are sited in and on the Wellfield. The Wellfield is the location of three Town drinking water supply wells ("Little Falls Ponds Wells").

4. Although Defendants are under a voluntary cleanup order with the State of New York to clean up their own property, they have repeatedly failed and refused to remediate the contaminant plume on the Town's property and in the Town's Little Falls Ponds drinking water wells. Moreover, Defendants refuse to provide compensation to the Town for the continuing damage to the Town's wells.

5. Defendants' negligent, reckless, and intentional acts, carried out for nearly four decades during its manufacturing operations, and today, by virtue of their persistent and intentional refusal to properly investigate and remediate the Town's property and wells,

constitute a source of continuing damage to the Town and its taxpayers, severely reducing the value of the Wellfield and surrounding property. These wanton, reckless, and intentional acts and omissions constitute a continuing trespass and continuing nuisance to the Town and its residents.

## The Parties

6. Plaintiff is a municipal corporation organized under the laws of the State of New York.

7. Defendant Dennison Monarch Systems, Inc. ("Dennison Monarch") is a corporation organized under the laws of the State of Delaware, authorized to do business in the State of New York. Dennison Monarch is a wholly owned subsidiary of Dennison Manufacturing Co. ("Dennison Manufacturing"), a corporation organized under the laws of the State of Nevada, authorized to do business in the State of New York since 1962. Dennison Manufacturing is a wholly owned subsidiary of Avery Dennison Corporation ("Avery Dennison"), a corporation organized under the laws of the State of Delaware, authorized to do business in the State of New York since 1977.

## Jurisdiction and Venue

8. The Court has jurisdiction over this case, and venue is proper, because the Town's property and municipal drinking water wells contaminated by Defendants are located in the Town of New Windsor, County of Orange, State of New York.

## Allegations Common to All Claims

### The Former Monarch Systems Plant

9. The former Monarch Systems plant property is located at 15-21 Ruscitti Road,

3

also known as MacArthur Avenue, in the Town of New Windsor.

10.     The plant property is owned by Avery Dennison.

11.     The property consists of 5.8 acres, of which approximately 2.2 acres was occupied by the former physical plant building that was located in the northwestern portion of the property. A parking lot was located south of the plant, and a semicircular driveway connecting to MacArthur Avenue surrounded a grassy area on the east side of the plant property. In 2009, Avery Dennison had the former plant building demolished.

12.     The Town-owned property, which includes wetlands, the two Little Falls Ponds, and the Town's Wellfield, are immediately adjacent to the eastern boundary of the old plant property. The three Little Falls Ponds drinking water supply wells are located within the Wellfield itself.

13.     Defendant Dennison Monarch Systems (and its predecessors, including Monarch Computer Products, Inc., and Monarch Office Systems, Inc., inactive New York corporations that were also wholly owned subsidiaries of Dennison Manufacturing) manufactured metal office furniture, office equipment, and computer equipment. Plant operations included cutting, shaping, welding, deburring, degreasing, coating and painting of metal components. Part of the plant's operations included the use of chlorinated solvents in two large degreasing pits located in the central portion of the plant. Massive amounts of solvents and process wastes were discharged from these pits and from other sources at the plant into the soils, groundwater, and bedrock underlying the plant property, for years during its use.

14.     Defendants were well aware that the solvents and other chemicals they used, stored, discharged, and disposed of on a daily basis were hazardous. In 1983, EPA inspectors

issued a Notice of Violation when they found that the plant's coating operations (the coating of metal components and equipment, which included the use of hundreds of tons of solvents) were producing emissions of volatile organic compounds that violated its Clean Air Act permit limits, and otherwise failing to comply with State and Federal law. Nonetheless, the plant continued these violations, and in 1985, the Department of Justice filed an enforcement action in United States District Court seeking injunctive relief and $25,000 in civil penalties. In 1984, the EPA had also classified the plant as a Significant Industrial User, due to the high volume of industrial process liquids generated by the plant. In short, Defendants knew or should have known that their activities and operations were ultra-hazardous and abnormally dangerous.

15. Defendants terminated manufacturing operations in approximately 1994.

### The Town's Little Falls Ponds Drinking Water Wells

16. The Town owns the property on the eastern border of the plant property. The Town's property consists of wetlands, the two Little Falls Ponds, and the Wellfield, which is the site of three Little Falls Ponds wells. These wells produced part of the Town's supply of potable drinking water beginning in the late 1960s. During those years of operation, the Town operated the wells under the supervision of the Orange County Department of Health. In 1971 and 1974, the Town commissioned the repair of two of the Little Falls Ponds well pumps and related pump house equipment, which significantly increased the daily yield of the wells. These were productive wells that yielded significant flows of drinking water for the Town's residents.

17. Thereafter, the Town was able to purchase Catskill Aqueduct water from New York City at very favorable rates, and that source of raw water became a major source of the Town's water supply. As a result, the Little Falls Ponds wells were decommissioned, but

remained an emergency back-up water source for the Town.

18. In the past few years, the Town experienced persistent water shortages that worsened every year, and it needs to reactivate the Little Falls Ponds wells. However, the Town Engineer has cautioned against bringing the wells back on line because of solvent contamination, because pumping the wells would alter the flow of groundwater, and would create a cone of depression that could draw in chlorinated solvents in a manner that would increase already-existing solvent contamination in the wells.

19. Without the Little Falls Ponds water supplies, the Town has been forced to seek other groundwater supplies. Because of increasing shortages of water supplies due to operational problems at the Catskill Aqueduct, and because of sharply inflated prices in recent years for the purchase of New York City water, the Town has been forced drill more than 12 exploratory wells in various locations, in the search for additional groundwater supplies. The Town just obtained Department of Health approvals for the St. Anne Wellfield, the only successful exploratory wellfield found to date, but that supply is not enough. And even if alternative wells are found to be productive enough, the Town will incur enormous additional capital costs for the design, development and construction of treatment and delivery systems. To date, the Town has incurred more than $250,000 in its explorations alone, in its search for additional groundwater supplies.

20. The Town's costs for the purchase of New York City aqueduct water have also skyrocketed. In addition to paying grossly increased unit costs for the raw water itself, the Town's monthly excess charges alone are $30,000 per month. Without the Little Falls Ponds supplies, these additional unit costs and excess charges will continue to spiral upward.

21. Exacerbating these problems was the crisis caused on February 27, 2011, when

New York City officials unexpectedly shut down the Catskill Aqueduct Tap that provides most of the Town's water, for problems related to upstream turbidity. The Town is in a water emergency and must be able to reactivate the Little Falls Ponds wells.

**The Voluntary Cleanup Agreement**

22. Environmental investigations of the old plant were begun nearly 20 years ago. Avery Dennison and Dennison Manufacturing conducted several investigations during the 1990s. Finally, in 1999, after years of negotiations with the New York State Department of Environmental Conservation (NYSDEC), Defendant Dennison Monarch signed Voluntary Cleanup Agreement #V00135-3 ("VCA"), under NYSDEC's then-existing Voluntary Cleanup Program ("VCP").

23. In the VCA, Dennison Monarch agreed to (1) investigate the extent of contamination on the former plant property and on adjacent properties, and (2) clean up the contamination on the plant property only.

24. The VCA does not require Defendants to remediate Town-owned property or any other off-site properties contaminated by Defendants' solvent wastes.

25. Although Dennison Monarch Systems was the nominal signatory to the VCA, Avery Dennison and Dennison Manufacturing have always conducted the investigations, dealt with NYSDEC, and planned and conducted the field work required under the VCA. NYSDEC has noted in its administrative record that Avery Dennison is responsible for investigative and remedial activities under the VCA. Avery Dennison continues to direct their consultant's remedial design work – for the plant property only.

26. Avery Dennison has refused to remediate the Town's property.

7

## Investigations of Solvent Contamination From Plant Operations

27. Defendants' early investigations revealed massive amounts of solvent contamination in the soils, groundwater, and bedrock underlying the former plant site. NYSDEC, in its Environmental Site Remediation Database, attributes the source of this contamination to the two large degreasing pits that were used for decades at the plant. Some of the chemical contaminants discovered in the environmental samples from the plant include 1,1,1-trichloroethane ("TCA"); trichloroethene ("TCE"); perchloroethene ("PCE"); 1,2-dichloroethane ("DCA"); 1,1-DCE and 1,2-DCE. These chemicals are hazardous substances, as that term is defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), the federal statute that governs the cleanup of Superfund sites. These chemicals have migrated through the subsurface off-plant property and are continuously and repeatedly contaminating the Town's property and drinking water supply wells.

28. Following a decade of wrangling between NYSDEC and Defendants, and the eventual execution of the Voluntary Cleanup Agreement in 1999, Defendants' investigations continued to drag on for more than another decade. Work plans and reports piled up, data was generated, remedial options studied and then scrapped. Virtually all of this information targeted the cheapest possible cleanup of the former plant site. It did not include cleanup, or even a thorough investigation of, Town property. Now, after nearly twenty years of investigations (including at least 12 reports and work plans), Defendants are on their fourth remediation consultant and still have not cleaned up the solvent plume.

29. During the first decade of their investigations, Defendants' remediation

consultants proposed to NYSDEC that leaving the solvents in the ground and groundwater was the right remedy. They insisted that through "natural attenuation" – doing nothing to actively clean up the contamination – the solvent plume would "clean itself up." NYSDEC rejected this approach and Defendants studied the site some more. After many more years of foot-dragging, during which Defendants studied first one, then another remediation technology (for the plant site only), Defendants next proposed the next cheapest cleanup for their property, called "in situ" remediation. Rather than excavating and disposing of all the solvent-contaminated soils to eliminate the source of the plume (which is more expensive), Defendants urged NYSDEC to allow "in situ" remediation, which would allow the contamination to remain in place, and be treated by injecting chemical substances to treat the solvent contamination on the plant property only. This remedy takes many years to complete, and it will not treat or remediate TCA and TCE that is present on the Town's property and in the Wellfield. Defendants' current (the fourth) remediation consultant is now preparing a remedial design work plan for the plant site only.

30.     Defendants have always insisted that the Little Falls Ponds wells are not contaminated with their solvents. Despite years of investigations, including soil sampling, groundwater monitor well sampling, and surface water sampling of the surface waters of the Little Falls Ponds, Defendants <u>never</u> sampled the Town's Little Falls Ponds drinking water wells. Despite the Town's several requests, Defendants blatantly refused to sample the Town's drinking water wells themselves. Instead, Defendants insisted that solvent contamination was so minor in the groundwater monitoring wells in the wetlands adjoining the Wellfield that the solvent plume could not possibly extend into the drinking water wells themselves. In fact, in 2005, when NYSDEC instructed Defendants to prepare a remedial contingency plan to implement in the

event that the Town put the Little Falls Ponds wells back on line, Defendants blatantly refused.

31. After years of inaction and intransigence on the part of Defendants, the Town hired its own geologic consultant, Conrad Geoscience Corporation ("Conrad Geoscience"), to analyze the data and to assist in negotiations with Defendants, whom the Town asked to replace its ruined drinking water supply. The Defendants persisted in their hard line, and continued to insist that there was no evidence that the Town's Little Falls Ponds drinking water wells were contaminated. As a result, in May 2008, Conrad Geoscience sampled the drinking water wells and documented that the solvent contamination from Defendants' plume had migrated into the wells themselves. Conrad Geoscience immediately provided this data to Defendants.

32. Notwithstanding this proof, Defendants refused to remediate the solvent plume in the wetlands and in the Town's Wellfield. To date, Defendants still ignore contamination in the Town's drinking water wells, and have never once bothered to take samples. In their submissions to NYSDEC, Defendants persist in omitting data that documents solvent contamination in the drinking water wells. The Defendants refuse to include the Town's property in their remedial work plan. They use the Voluntary Cleanup Agreement as a shield, asserting that they only agreed to clean up plant property, not Town property. It is clear that without judicial intervention, the Defendants will continue to hide behind the VCA as a means of flouting their obligations to the Town and the public at large.

33. Now that the Town's own consultant has confirmed contamination in the Little Falls Ponds drinking water wells, it is clear that the Town cannot develop or pump the wells because they are being continuously and repeatedly contaminated with solvents from the old plant. Pumping these wells will cause further "solvent infiltration," from a cone of depression

that will draw in more solvents from the contaminant plume. And because the old plant property remains so heavily contaminated, decades later, those solvents will continue to flow through soils and groundwater, further contaminating the Town's drinking water supplies. This continuing nuisance and trespass will not abate unless and until the solvent contamination on Town property, including the Town's drinking water wells, is remediated to the point that drinking water standards are restored.

34. Since Defendants have refused to remediate the Town's property and the Little Falls Ponds drinking water well supplies, and refused to compensate the Town for its costs and damages, the Town must continue to expend significant public funds to ameliorate these repeated and continuing damages.

35. The Town has already incurred significant costs responding to the solvent contamination, including professional fees and costs, and capital improvement costs to explore other less productive groundwater sources for drinking water to compensate for the contaminated water supplies from the Little Falls Ponds wells.

36. The Town will have to expend significant sums in the future, including costs for additional wellfield exploration and development, design, production and treatment, and the continued additional purchases of increasingly expensive raw water from New York City. Based upon cost projections prepared by the Town Engineer, the Town will incur future costs of $30 Million over the next 20 years to compensate for the drinking water wells that are being continuously and repeatedly contaminated by the Defendants' unremediated solvents.

11

## FIRST CAUSE OF ACTION FOR NEGLIGENCE

37. The Town repeats and realleges paragraphs 1 through 36 hereof.

38. Defendants owed a duty to Plaintiff and to the public at large to refrain from unauthorized discharges of solvents, hazardous materials, and other contaminants into the soils and into the groundwater of the State.

39. Pursuant to New York statutory and common law, any person responsible for the discharge of solvents and other chemical contamination is under a legal obligation to the public at large and to persons injured by such discharges to contain, clean up, and remove such hazardous substances, to restore affected properties and wells to their pre-spill conditions, and to exercise due care and diligence in so doing. Defendants have a duty to the Town to remediate the contamination on Town property and in the Town's drinking water wells.

40. Nearly a decade after the discovery of solvent contamination at the plant, Defendant Dennison Monarch finally signed the above-referenced Voluntary Cleanup Agreement. Since that time, Defendants have failed and refused to properly investigate the Town's drinking water wells. For example, Defendants insisted to the Town and NYSDEC that the three Little Falls Ponds drinking water wells were not contaminated, but they refused to sample these wells. Thus, the Town was compelled to hire its own consultant to test the drinking water wells, and that sampling by the Town's consultant confirmed contamination in May 2008. Nonetheless, Defendants have refused to clean up solvents in the Town's wetlands and Wellfield, and refuse to compensate the Town for its continuing losses and expenses.

41. Defendants' failure to properly investigate and remediate the Town's Little Falls Ponds wells is an ongoing breach of their duty of care to the Town and its residents, resulting in

damages and economic losses to the Town, loss of the property value of its Wellfield, loss of its drinking water wells, and the other damages and expenses described in this Complaint.

42. All the Town's damages were proximately caused solely by the acts and omissions of Defendants, without any negligence or fault of the Town contributing thereto.

43. The Defendants' conduct was and continues to be negligent, reckless, intentional, and wanton, exhibiting a conscious and willful disregard for the public safety, the Town's property, and the Town's right to use its emergency drinking water supplies.

44. The continuing presence of Defendant's solvent contamination, and their continuing refusal to remediate it, have diminished and damaged the value of the Town's property.

45. By reason of the foregoing, Plaintiff has been and will be damaged in a presently undetermined amount, but in no event less than THIRTY MILLION DOLLARS ($30,000,000).

## SECOND CAUSE OF ACTION FOR STRICT LIABILITY FOR ULTRA-HAZARDOUS ACTIVITIES

46. The Town repeats and realleges paragraphs 1 through 45 hereof.

47. Defendants knew of the hazardous and dangerous nature of the massive quantities of chemicals they used in their manufacturing processes and plant processes. Defendants' decades-long use, handling, storage, and disposal of hundreds of thousands of pounds of chemical substances, including TCA, TCE, DCE, and other hazardous substances, is abnormally dangerous and an ultra-hazardous activity.

48. Due to the nature of their operation of handling, storing, and discharging of large quantities of hazardous substances in their manufacturing operations in underground pits,

Defendants are strictly liable, without regard to fault, for all direct and indirect damages sustained by The Town as set forth above. These damages include, but are not limited to, engineering fees, consultants' fees, attorneys' fees, capital expenditures, and all other necessary costs of response incurred by the Town in responding to the Defendants' releases of solvents on the Town's property.

49. Defendants' handling, storage and disposal of hazardous substances, and their continued refusal to remediate the Town's property and drinking water wells, are grossly negligent, reckless, and wanton, and exhibit Defendants' conscious disregard for the safety, health, property, and rights of the Town.

50. The continuing and repeated presence of Defendants' solvent contamination, and their continuing and repeated refusal to remediate it, have diminished and damaged the value of the Town's property.

51. By reason of the foregoing, the Town has been damaged and will be damaged in a presently undetermined amount, but in no event less than THIRTY MILLION DOLLARS ($30,000,000), and is entitled to an award of punitive damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION FOR TRESPASS

52. The Town repeats and realleges paragraphs 1 through 51 hereof.

53. At all times mentioned herein, the Town has owned and continues to own the Little Ponds Wellfield property in fee simple.

54. The Town was and is entitled to the exclusive use, enjoyment and possession of its property, including the wetlands, the Wellfield, and the Little Falls Ponds wells, in an

uncontaminated physical condition.

55. For decades, Defendants and their predecessors intentionally used chlorinated solvents, including TCA and TCE, in underground pits in a negligent, reckless, and/or willful manner. Those intentional actions have caused those solvents to leak from their underground pits into the soils and groundwater under the plant, and migrate through those soils and groundwater and contaminate the soils and groundwater on Town property immediately adjacent to the plant.

56. Defendants knew or should have known that their decades-long, continued use of these solvents in underground pits would leak into the soils and groundwater of the plant and contaminate their own property and neighboring properties.

57. Defendants know that their use of these chlorinated solvents has resulted in an unauthorized physical invasion of the Town's Wellfield property, yet they intentionally refuse to remove and remediate the continuing and repeated contamination, despite the Town's repeated requests that they do so.

58. Defendants' intentional acts, in using chlorinated solvents in a manner that has caused them to migrate through the subsurface onto the Town's property, as well as Defendants' intentional refusal to remediate and remove these solvents from Town property, have caused substantial harm to the Town and its property.

59. Defendants' intentional and intransigent acts are ongoing and constitute a continuing trespass, and continue to cause the Town substantial loss, harm and damage.

60. The discharge of hazardous substances that have migrated onto the Town's property and into its drinking water wells, and other conduct described herein, was and is an unauthorized and unjustified intrusion upon the Town's property, and the Town's use and enjoyment of that property and its emergency drinking water supplies.

61. The continuing presence of Defendants' solvent contamination, and their continuing refusal to remediate it, have diminished and damaged the value of the Town's property.

62. By reason of the foregoing, the Town has been damaged and will be damaged in a presently undetermined amount, but in no event less than THIRTY MILLION DOLLARS ($30,000,000), and is entitled to an award of punitive damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION FOR PRIVATE NUISANCE

63. The Town repeats and realleges paragraphs 1 through 62 hereof.

64. Defendants' intentional acts and omissions while operating the plant resulted in the discharge of solvents in the soils and groundwater, continuously and repeatedly contaminating the Town's property and its drinking water supply wells. Moreover, Defendants' persistent and intentional refusal to remediate the Town's property and its drinking water supply wells is the reason for the continuing presence of this contamination.

65. Defendants' use, handling, storage, and disposal of chemical substances, including hundreds of thousands of pounds of solvents, including TCA, TCE, DCE, and other hazardous substances, is an abnormally dangerous activity.

66. Defendants have unreasonably interfered with the Town's right to the use and

enjoyment of its property and its emergency drinking water supplies.

67. The Defendants' interference with the Town's use and enjoyment of its property and its emergency drinking water supplies is significant, substantial, unjustified and continuing.

68. The Defendants' acts and omissions have caused a private nuisance that is continuously and repeatedly damaging the Town's property and its emergency drinking water supplies.

69. Solely by reason of the Defendants' conduct, the Town has sustained and is continuing to sustain substantial property damage, economic loss and a loss of its drinking water wells, and other damages and expenses described herein.

70. All of the Town's injuries and damages were caused solely by reason of the acts and omissions of the Defendants, without any negligence or fault of the Town contributing thereto.

71. The Defendants' conduct was careless, reckless, grossly negligent, and exhibits a conscious and wanton disregard for the property rights of the Town, as well as the health, safety and well-being of the Town, its residents, and members of the public at large.

72. The Defendants are liable for the creation and maintenance of a continuing private nuisance on the Town's property, and for all resulting damages and costs, and for the remediation of the Town's property and remediation of the Little Falls Ponds wells.

73. By reason of the foregoing, the Town has been damaged and will be damaged in a presently undetermined amount, but in no event less than THIRTY MILLION DOLLARS ($30,000,000), and is entitled to an award of punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION FOR PUBLIC NUISANCE

74. The Town repeats and realleges paragraphs 1 through 73 hereof.

75. The Town is the municipal government entitled to bring this action on behalf of its residents and members of the public at large whose interests have been and continue to be damaged by the public nuisance created by Defendants' conduct.

76. The Defendants' intentional acts and omissions while operating the plant, and their persistent, intentional refusal to remediate Town property and the Town's drinking water supply wells, were and are an unreasonable interference with the rights, health, safety and well-being of the Town's residents and members of the public at large.

77. Solely because of the Defendants' intentional conduct, the Town's residents and members of the public at large have been deprived of the benefits of the Town's wells, including clean drinking water, and the availability, use and enjoyment of uncontaminated public property.

78. The Defendants' intentional interference with these rights is significant, substantial, unjustified and continuing. This interference has had and will continue to have a substantial injurious effect upon the rights of the public, in that Defendants have damaged and are continuing to damage public property (with no intention to clean it up) and are continuously and repeatedly contaminating a source of clean drinking water, with no intention of remediating it.

79. Because of Defendants' willful, intransigent conduct in refusing to remediate the Town's property and the Little Falls Ponds wells, the Town has been, and will continue to be, forced to seek less desirable, alternative drinking water, at great cost to the Town and its residents, who will bear the increased tax burden of these costs.

80. These economic losses and environmental damage to the Town's property and its wells have been and will continue to be sustained by the Town and its residents for as long as the public nuisance continues unabated, and until Defendants compensate the Town for its losses caused by the public nuisance.

81. Defendants have unreasonably interfered with the rights of the residents of the Town of New Windsor and members of the public to use and enjoy Town-owned public property and its emergency drinking water supplies.

82. Solely by reason of the Defendants' conduct, the Town and its residents have sustained and will continue to incur substantial economic losses, environmental harm, loss of drinking water wells, and other damages and expenses described herein.

83. The Defendants' intentional conduct was and is careless, reckless, grossly negligent and wanton, and exhibits a conscious and willful disregard for the health, safety, welfare, well-being and rights of the Town's residents and the public at large.

84. The Defendants are therefore liable to the Town, its residents, and the public for the creation and maintenance of a continuing public nuisance on the Town's property, and for all resulting damages and costs, and for the remediation of the Town-owned public property and the public drinking water wells.

85. By reason of the foregoing, the Town and its residents have been damaged and will be damaged in a presently undetermined amount, but in no event less than THIRTY MILLION DOLLARS ($30,000,000), and are entitled to an award of punitive damages in an amount to be determined at trial.

**WHEREFORE**, The Town demands judgment against Defendant as follows:

a. On the First through Fifth Causes of Action, compensatory, consequential and special damages in an amount not less than THIRTY MILLION DOLLARS ($30,000,000);

b. On the Second through Fifth Causes of Action, an award of punitive damages; and

c. On the Fourth and Fifth Causes of Action, injunctive relief and an order requiring Defendants to remediate solvent contamination on the Town's property and in the Little Falls Ponds wells; and

d. Such other and further relief as the Court deems equitable, reasonable and proper, including all costs, fees, disbursements and interest.

Dated: Nyack, New York
March 3, 2011

WESTERVELT & REA

By: *[signature]*

KIMBERLEA SHAW REA
PAUL A. CLEWELL
85 Jefferson Street
Nyack, New York 10960
(845) 535-3130
(845) 675-7115 FAX
kimberlearea@gmail.com
paulclewell@yahoo.com

**Attorneys for Plaintiff**